[Cite as *State v. Jeffrey*, 2013-Ohio-504.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24916 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 11-CR-1661/1 |
| v. | : | |
| | : | |
| RAYSHAWN T. JEFFERY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of February, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, Post Office Box 972, 301 West Third Street, Dayton, Ohio 45422
Attorney for Plaintiff-Appellee

KRISTOPHER A. HAINES, Atty. Reg. #0080558, Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1} Defendant-appellant Rayshawn T. Jeffery appeals from his conviction and sentence for Rape, Kidnapping, and Having Weapons While Under Disability. Jeffery

contends that prosecutorial misconduct committed during the State's closing argument deprived him of his right to a fair trial; the trial court erred in failing to assure juror unanimity in his Rape and Kidnapping guilty verdicts, in violation of Crim.R. 31(A); his trial counsel was ineffective for failing to raise the prosecutorial misconduct and juror unanimity errors during the trial; and the trial court erred in not notifying Jeffery at his sentencing hearing that a failure to pay the court costs could result in an order to perform community service.

{¶ 2}    We conclude that the State's closing argument did not deprive Jeffery of a fair trial, and his Crim.R. 31(A) right to juror unanimity was not violated.  Furthermore, we conclude that Jeffery has failed to demonstrate ineffective assistance of trial counsel.   Finally, we conclude that the trial court erred in not notifying Jeffery that a failure to pay court costs could result in an order to perform community service.   Accordingly, that part of the judgment of the trial court ordering the payment of court costs is Reversed; the judgment of the trial court is Affirmed in all other respects; and this cause is Remanded for the re-imposition of court costs, in accordance with this opinion.


## I. The Offenses

{¶ 3}    One night in May 2011, J.R. and her fiancé, J.S., were living in an abandoned house in Dayton.  At around 3:00 a.m., Rayshawn Jeffery and Shane Hopkins arrived at the house.  After knocking at the front door, Jeffery was invited into the house and came in through the bedroom window.  He started waving a gun around and began yelling about the fact that the house belonged to his grandmother and that J.R. and J.S. would have to pay rent. Hopkins then climbed into the bedroom through the open window.

{¶ 4} Jeffery told J.R. that he needed to speak with her privately in another room. After he led her into the other room, Jeffery told J.R. that he needed payment for her staying at his grandmother's house. He lifted up his shirt, unbuckled his pants, and told J.R. to get on her knees. Jeffery pushed her down, held her head with his right hand, and forced her to perform fellatio on him as he held the gun in his left hand.

{¶ 5} Hopkins came into the room as Jeffery was forcing J.R. to perform fellatio. Hopkins walked up behind J.R. and picked her up by her hips to make her stand up. She asked what Hopkins was doing and Jeffery responded "[H]e's my blood brother; this is his grandmama's house too, so he's got to get his part of the payment." Jeffery instructed her to pull down her pants and give Hopkins his payment. When J.R. hesitated, Hopkins removed her shorts and began to have vaginal intercourse with her from behind as she was bent over performing fellatio sex on Jeffery.

{¶ 6} At some point while J.R. was being raped, J.S. stood outside the room and asked if J.R. was okay. Jeffery lifted the gun a bit higher to her head, which prompted J.R. to tell J.S. that she was fine and to get away from the door. J.S. left the house and called 9-1-1. Police cruisers arrived outside the house at about the same time Jeffery ejaculated into J.R.'s mouth. Hopkins then stopped having intercourse with J.R. and pulled up his pants.

{¶ 7} Jeffery and Hopkins escaped out the bedroom window. J.R. provided the police with a description of her attackers and the police stopped Jeffery and Hopkins a short distance from the abandoned house. J.R. identified the two of them to the police. A handgun was found on a nearby porch. Jeffery and Hopkins denied that they were in the abandoned house. They were then arrested and taken to the police station.

{¶ 8} Jeffery and Hopkins were interviewed by the police. Initially, each of them

denied that they had any contact with J.R. that morning. But during a second interview, Hopkins admitted that he and Jeffery had consensual sexual contact with J.R. DNA analysis confirmed that sexual conduct occurred between J.R. and Hopkins and between J.R. and Jeffery. A swab that was taken from Jeffery's penis revealed the presence of J.R.'s DNA, and the DNA of both Hopkins and J.R. was found on a condom that was discovered in the back room of the abandoned house.

## II. The Course of Proceedings

{¶ 9} Jeffrey and Hopkins were charged by indictment with one count of Rape, in violation of R.C. 2907.02(A)(2), one count of Kidnapping, in violation of R.C. 2905.01(A)(4), and one count of Having Weapons While Under Disability, in violation of R.C. 2923.13(A)(2). The Rape and Kidnapping counts carried firearm specifications, in violation of R.C. 2929.14 and 2941.145.

{¶ 10} Jeffery and Hopkins were tried together before a jury. The jury returned guilty verdicts on the Rape and Kidnapping counts, along with the firearm specifications. Jeffery chose to waive his right to a jury trial with respect to his Having Weapons While Under Disability count. The trial court found Jeffery guilty on this count.

{¶ 11} Jeffery was sentenced to a total prison term of twelve years and was classified as a Tier 3 sex offender. Jeffery was ordered to pay court costs. The trial court notified Jeffery of the terms of his post-release control, but did not notify him of any consequence that might result from a failure to pay court costs. From his conviction and sentence, Jeffery appeals.

### III. The Alleged Prosecutorial Misconduct Did Not

### Prejudicially Affect Jeffery's Substantial Rights

{¶ 12}   Jeffery's First Assignment of Error states:

THE PROSECUTOR'S MISCONDUCT DENIED MR. JEFFERY A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF MR. JEFFERY'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶ 13}   Jeffery contends that "the State recognized that [J.R.] and [J.S.] were unreliable witnesses, and felt compelled to bolster their testimony through various improper techniques."   Brief, p. 10.   According to Jeffery, the outcome of his trial "came down to the jury's proper assessment of witness credibility," and "the prosecutor complicated the jury's proper function when she aligned herself with the jury, vouched for the credibility of the State's witnesses, denigrated Mr. Jeffery's defense, and improperly commented on Mr. Jeffery's right to remain silent and suggested that Mr. Jeffery's invocation of that right was evidence of his guilt."   *Id.* at 9.

{¶ 14}   All of the alleged prosecutorial misconduct identified by Jeffery occurred during the State's closing argument.   "Generally, prosecutors are entitled to considerable latitude in opening and closing arguments."   *State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009–Ohio–293, ¶ 12.   *Accord State v. Ballew*, 76 Ohio St.3d 244, 255, 667 N.E.2d 369 (1996).   A prosecutor may comment on "what the evidence has shown and what reasonable inferences can be drawn therefrom."   *Id.,* quoting *State v. Richey*, 64 Ohio St.3d

353, 362, 595 N.E.2d 915 (1992). "The closing argument must be reviewed in its entirety to determine prejudicial error." *Ballew* at 255.

{¶ 15} The test for prosecutorial misconduct is whether the remarks were improper, and if so, whether they prejudicially affected the accused's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The question is whether the prosecutor's misconduct so infected the accused's trial with unfairness that the accused's convictions came in violation of the right to due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 644, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

{¶ 16} Jeffery concedes that there was no objection at trial to the alleged prosecutorial misconduct so that we must review his claims for plain error. Brief, p. 9. Plain error is not present unless, but for the error complained of, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. A finding of plain error should be made with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.* at paragraph three of the syllabus.

### A. Vouching for the Credibility of the Witnesses

{¶ 17} Jeffery contends that the prosecutor improperly expressed her opinion regarding the credibility of the witnesses. In support of his argument, Jeffery cites three portions of the trial transcript, one in which the prosecutor allegedly vouched for the State's

witnesses (Tr. 1199) and two in which the prosecutor "vouched" for J.R.'s testimony (Tr. 1229, 1232-1234).

{¶ 18} Jeffery contends that the prosecutor improperly vouched for the State's witnesses in the following excerpt from the State's closing argument:

Folks, a careful and faithful review of this evidence and of all the other evidence presented to you in this case; a review of [J.R.'s] testimony alone and this physical evidence much less the exceptional, almost flawless, work of the Dayton Police Department immediately - - May 11th, May 12th, all summer. There is proof beyond a reasonable doubt that Rashawn Jeffery and Shane Hopkins raped this girl vaginally, by forcing her to have fellatio and they took her to that back room and they held her against that wall with that gun and they wouldn't let her go. * * * Tr. 1199.

{¶ 19} Jeffery also identifies the following excerpt from the State's closing arguments as further improper vouching for the State's key witness:

[J.R.] told the story and the evidence matched what she said because it's the truth.

He's the opposite. He's how you know when somebody's not telling you the truth. Because he started, he wasn't even in that house. Well, at first he started he was some place else. He was on Gramont when he told Detective House, Officer House, on the street. But the other guy said Anna and Kammer. So when he's interviewed by Detective Lawson now that the other guy have him Anna and Kammer now he says he was coming from Anna and Kammer. And he sticks with that for a

while until somebody says something about his DNA put him in the house. So then he goes a little bit further now that they confront him with that - - well, he came in the house but he didn't do nothing; he didn't touch that girl.

* * *

You know, yes, there came a time when she was lying about what happened to her. First of all, she is tracked - - a rape victim is tracked down by a defendant's mother. How inappropriate is that? And how threatening is that in its very nature? She doesn't have no place to go. She can't run away and hide.

She's got another group of people tracking her down making her make a video with the gun in the pants. She is scared.

Let me tell you this. Talk about motivation for telling the truth or telling a lie. Do you think anything good happened to her for calling the police? Did she get anything? She has been insulted. She has made, been made fun of. She's had to go through a three-hour rape examine. She had to go through hours of cross examination where she was grilled and insinuations were made about her. What motivation did she have to do that? Any one of you think if somebody would've handed her $20,000, $10,000, a thousand dollars not to go through that that she wouldn't have taken it?

You know, that's what the defendants missed. It's not [J.R.] versus these defendants. It's the State of Ohio versus those defendants. It's not her choice because if it was, she wouldn't

have done it.   What did this get her?

That's how you know she's telling the truth.   She's not getting out of something.   She's not getting something.   She's doing it because it's the truth and because it matches what - - and you know it's the truth, it matches what it said and it matches every piece of that evidence.

\* \* \*

Ladies and gentlemen, the evidence in this case has been overwhelming.   You know what happened to [J.R.].   She told you what happened.   She told the police what happened.   She told the rape nurse what happened to her.   And it matched the evidence.

And there was no credible evidence to the contrary.   All you have there is people who change their stories to suit the evidence or somebody who sticks to a ridiculous story despite all evidence.

She told you the truth.   That's why all the evidence fits, ladies and gentlemen.   And that's why the State of Ohio will ask you to convict both of these men as charged – kidnapping and rape.   \* \* \* Tr. 1229-1234.

{¶ 20}   During closing arguments, prosecutors "can bolster [their] own witnesses, and conclude by saying, in effect, 'The evidence supports the conclusion that these witnesses are telling the truth.'"   *State v. Draughn,* 76 Ohio App.3d 664, 671, 602 N.E.2d 790 (5th Dist.1992).   But a prosecutor "cannot say, 'I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor."   *Id.,* citing *State v. Smith,* 14 Ohio St.3d 13, 470

N.E.2d 883 (1984). "A prosecutor's statement on witness credibility is not an improper voucher where it neither implies knowledge of facts outside the record nor places the prosecutor's personal credibility at issue." *State v. Miller*, 4th Dist. Washington No. 06CA11, 2007-Ohio-427, at ¶ 24, citing *State v. Keen*, 81 Ohio St.3d 646, 666, 693 N.E.2d 246 (1998).

{¶ 21} Jeffery argues that these statements by the prosecutor relating to witness credibility were improper. We disagree. A "prosecutor may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. The prosecutor may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight." *State v. Clay*, 181 Ohio App.3d 563, 2009–Ohio–1235, 910 N.E.2d 14, ¶ 47 (8th Dist.) (Citation omitted.) Here, the prosecutor never said that she personally believed the State's witnesses. Rather, the prosecutor argued that, under the circumstances, it was more likely that the State's witnesses were telling the truth. In short, the prosecutor properly argued facts to support the witness's credibility. *State v. Green,* 90 Ohio St.3d 352, 374, 2000-Ohio-182, 738 N.E.2d 1208. The prosecutor did not impermissibly vouch for the credibility of the State's witnesses.

### B. The State Did Not Impugn Jeffery's Right to Remain Silent

{¶ 22} Although considerable latitude is permitted in closing argument, a prosecutor must not equate a defendant's silence to guilt. *State v. Thompson*, 33 Ohio St.3d 1, 4, 514 N.E.2d 407 (1987). Jeffery contends that the prosecutor "impugned Mr. Jeffery's right to

remain silent[.]" Brief, p. 6. Jeffery identifies the following excerpt from the State's closing argument as constituting the prosecutorial misconduct:

From the moment they're approached by Officer David House, they give different stories. Are they walking away like two men who committed rape? I think they're walking like two men – I think the evidence supports they're walking like two men who think they're going to get away with rape. The police are chasing out back. They get out the front window. They ditch that gun. They're walking like two men get away with rape. They can't get their story together.

One of them denies, denies, denies. I'm not even sure what his defense is. He has a right to sit there and say nothing. He didn't say nothing to the police although he had a right not to, he said I wasn't even there. And today he's arguing, through counsel, that it was consent? Tr. 1228-1229.

{¶ 23} Jeffery exercised his right to not testify at trial. He also exercised his right to remain silent after initially speaking with the police. Prior to exercising his right to remain silent, however, he made a statement to the police and answered some questions from the police. The statement and interview were shown to the jury. Nothing the prosecutor said above is inconsistent with the evidence given to the jury. Furthermore, the prosecutor correctly stated that Jeffery "has a right to sit there and say nothing." The prosecutor's closing argument, when viewed as a whole, did not equate Jeffery's silence to guilt. *Thompson* at 4. The argument properly commented upon the inconsistency between Jeffery's statement to the police, before he exercised his right to remain silent, that he had no contact

with J.R., and his defense at trial, that his sexual conduct with her was consensual.

**{¶ 24}** The First Assignment of Error is overruled.

### IV. No Error Is Demonstrated with Regard to Juror Unanimity

**{¶ 25}** Jeffery's Second Assignment of Error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO ASSURE THAT THE JURY'S VERDICTS WERE UNANIMOUS, IN VIOLATION OF CRIM.R. 31(A), AND IN VIOLATION OF MR. JEFFERY'S RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

**{¶ 26}** The evidence presented at trial showed that Jeffery forced J.R. to perform fellatio on him, while Hopkins engaged in vaginal intercourse with J.R. Fellatio and vaginal intercourse are alternative means of committing the offense of Rape. R.C. 2907.02(A)(2). The Kidnapping offenses were based on the movement and restraint of J.R. for the purpose of engaging in sexual conduct. Jeffery contends that the trial court erred when it "failed to assure that the jury agreed regarding which of the specific acts of sexual conduct supported the convictions." Brief, p. 11. Jeffery concedes that we must review the alleged error under a plain error analysis, since no objection was made during the trial. Brief, p. 14.

**{¶ 27}** In order to find Jeffery guilty of Rape in this case, the State had to prove that he "engage[d] in sexual conduct with another when [he] purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). The trial court's instruction to the

jury on the count of Rape mirrored the language in R.C. 2907.02(A)(2), stating:

> The defendants are charged with rape. Before you can find either defendant guilty of rape, you must find beyond a reasonable doubt that on or about the 11th day of May, 2011, and in Montgomery County, Ohio, each defendant engaged in sexual conduct with another, in this case [J.R.], by purposely compelling the other person to submit by force or threat of force.
>
> Sexual conduct in this case means fellatio or vaginal intercourse between a male and a female. Tr. 1243.

{¶ 28} In order to find Jeffery guilty of Kidnapping in this case, the State had to prove that he "by force, threat, or deception * * * remove[d] another from the place where the other person is found or restrain[ed] the liberty of the other person" with the purpose of "engag[ing] in sexual activity * * * with the victim against the victim's will[.]" R.C. 2905.01(A)(4). Once again, the trial court's jury instruction tracked the language of the statute. The trial court's instruction to the jury on the count of Kidnapping, states, in part:

> The defendants are also charged with kidnapping. Before you can find either defendant guilty of kidnapping, you must find beyond a reasonable doubt that on or about the 11th day of May, 2011, and in Montgomery County, Ohio, each defendant did by force, threat or deception remove J.R. from the place where she was found or did restrain J.R. of her liberty for the purpose of engaging in sexual activity with the victim against her will. Tr. 1246.

{¶ 29} The trial court also instructed the jury on the law of complicity. The trial court stated, in part:

Each defendant may be convicted of rape and/or kidnapping as a principal offender or upon the basis of complicity.

Rashawn Jeffery may be convicted of the firearm specifications only as a principal offender.

Shane Hopkins may be convicted of the firearm specifications as a principal or upon the basis of complicity.

Before you can find either defendant guilty of rape and/or kidnapping upon the basis of complicity, you must find that on or about May 11th, 2011, and in Montgomery County, Ohio, the defendant knowingly aided or abetted the other defendant to commit the offense of rape and/or kidnapping as already defined. Tr. 1247-1248.

{¶ 30} Jeffery does not take issue with the jury instructions set forth above. Rather, Jeffery argues that the trial court failed to ensure that the twelve members of the jury were unanimous in their guilty verdict. The trial court's instructions to the jury regarding unanimity state, in part:

The first verdict form relates to Rashawn Jeffery and the charge of rape, force or threat of force. It's a fairly simple format. "We, the jury, upon the issues joined in this case do find the defendant, Rashawn Jeffery" and you'll insert, in ink, either guilty or not guilty "of rape, force or threat of force as charged in Count 1 of the indictment."

As you can see, there are 12 places for each juror's signature and when you reach a verdict, whether that verdict is guilty or not guilty, each of you

must sign the verdict form.

Also, it's important to note that whether your verdict is guilty or not guilty, the verdict must be unanimous. All 12 of you must agree upon the verdict, again, whether it's guilty or not guilty.

* * *

Going then to the charges of kidnapping. The first verdict form relates to Rashawn Jeffery as relates to the charge of kidnapping. It's the same format. And once again, you'll insert either guilty or not guilty where indicated.

And, once again, to repeat myself but I think it's worthy of repetition, each of you must agree upon the verdict; each of you must sign the verdict form and it must be unanimous whether the verdict is guilty or not guilty. Tr. 1250-52.

{¶ 31} In Ohio, unanimity in a jury verdict is required by Crim.R. 31(A). *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 35. "Although Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied." *Id.* at ¶ 38, citing *Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). "[A] 'jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime.'" *Id.*, quoting *Richardson*.

{¶ 32} Both parties agree that the proper analysis to determine whether a defendant's

Crim.R. 31(A) right has been violated is guided by the Supreme Court's decision in *State v. Gardner*. The Court held, at ¶ 48-52:

In determining whether the state has impermissibly interfered with a defendant's Crim.R. 31(A) right to juror unanimity and the due process right to require that the state prove each element of the offense beyond a reasonable doubt, the critical inquiry is whether the case involves "alternative means" or "multiple acts."

" ' "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt.

" ' "In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." ' " (Footnote omitted.) *State v. Jones* (2001), 96 Hawai`i 161, 170, 29 P.3d 351, quoting

*State v. Timley* (1994), 255 Kan. 286, 289-290, 875 P.2d 242, quoting *State v. Kitchen* (1988), 110 Wash.2d 403, 410, 756 P.2d 105.

We find the distinction between "alternative means" cases and "multiple acts" cases to be a meaningful one and one that is consistent with our precedent. *Davis*, *McKnight*, and *Thompson* illustrate our analysis in alternative means cases, while our decision in *State v. Johnson* (1989), 46 Ohio St.3d 96, 545 N.E.2d 636, recognizes that different standards apply in a multiple-acts case.

In *Johnson*, we held that if a single count of an indictment can be divided into two or more " 'distinct conceptual groupings,' " the jury must be instructed specifically that it must unanimously find that the defendant committed acts within one conceptual grouping in order to reach a guilty verdict. Id. at 104- 105, 545 N.E.2d 636, quoting *United States v. Gipson* (C.A.5, 1977), 553 F.2d 453, 458. But if the single count can be divided into a "single conceptual grouping of related facts," no specific instruction is necessary, because in such a case, the alternatives presented to the jury are not conceptually distinct, and a "patchwork" verdict is not possible. *Johnson,* 46 Ohio St.3d at 105, 545 N.E.2d 636.

{¶ 33} In *Gardner*, the Supreme Court also addressed Ohio's Rape statute with respect to Crim.R. 31(A)'s requirement of juror unanimity. The Court, citing its decision in *State v. Thompson*, 33 Ohio St.3d 1, 514 N.E.2d 407 (1987), stated, at ¶ 44 and 65:

We held that Ohio's rape statute required a showing of "sexual

conduct" and that both vaginal intercourse and anal intercourse satisfied the statutory definition of "sexual conduct." We concluded that jurors needed to find only that sexual conduct had occurred in order to find the aggravating circumstance of rape and that because the statute did not require a specific finding as to the *type* of rape, the trial court did not err by refusing to instruct the jury that it must make that finding. *Id.*, 33 Ohio St.3d at 11, 514 N.E.2d 407. We concluded, "The fact that some jurors might have found that appellant committed one, but not the other, type of rape in no way reduces the reliability of appellant's conviction, because a finding of either type of conduct is sufficient to establish the fact of rape in Ohio." *Id.*

* * *

Similarly, we do not require all jurors to agree whether a defendant raped a victim orally, vaginally, or anally, because all three constitute "sexual conduct" in violation of the rape statute. In such cases, there is no violation of the jury unanimity rule as long as all of the jurors agree that there was sufficient penetration to satisfy the "sexual conduct" element of the crime of rape. *Thompson*, 33 Ohio St.3d at 11, 514 N.E.2d 407.

{¶ 34} Based on our review of *Gardner* and *Thompson*, the Rape and Kidnapping statutes, the jury instructions, the indictment, and the evidence presented to the jury, we conclude that this is an alternative-means case rather than a multiple-acts case. As *Gardner* explained, the jury is therefore not required to agree whether Jeffery raped J.R. orally (his own conduct) or vaginally (as complicit in Hopkins's conduct) because each is an alternative form

of "sexual conduct," an element of Rape. There is no distinction between a defendant convicted of complicity or as a principal offender. R.C. 2923.03(F).

{¶ 35} Having found this case to be an alternative means case, we "must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt." *Gardner* at ¶ 49. Based on the evidence presented to the jury, including the testimony of J.R. and J.S., along with the DNA evidence, we conclude that a rational trier of fact could have found each means of committing Rape and Kidnapping proved beyond a reasonable doubt.

{¶ 36} The Second Assignment of Error is overruled.

### V. Jeffery Has Failed to Demonstrate

### Ineffective Assistance of Trial Counsel

{¶ 37} Jeffery's Third Assignment of Error states:

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF MR. JEFFERY'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶ 38} A claim of ineffective assistance of trial counsel requires both a showing that counsel's performance was deficient and that the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court "must indulge in a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance." *Id.* at 689. The prejudice prong requires a finding that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, with a reasonable probability being "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 39} Jeffery contends that trial counsel was ineffective by failing to object to and seek curative instructions relating to the prosecutorial misconduct that occurred during the State's closing argument and by failing either to object to the trial court's jury instructions or to request appropriate jury instructions regarding juror unanimity. In essence, Jeffery contends that his trial counsel was ineffective for failing to object to the errors he assigns in his first two assignments of error. As discussed in Parts III and IV, above, we conclude that the record fails to establish prosecutorial misconduct or that Jeffery's Crim.R. 31(A) right to juror unanimity was violated. Therefore, Jeffery cannot demonstrate that he received ineffective assistance of trial counsel.

{¶ 40} The Third Assignment of Error is overruled.

### VI. The Trial Court Erred When It Failed to Notify Jeffery
### of the Potential Consequences of Failing to Pay Court Costs

{¶ 41} Jeffery's Fourth Assignment of Error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT IMPOSED COURT COSTS AGAINST MR. JEFFERY WITHOUT NOTIFYING MR. JEFFERY THAT HIS FAILURE TO PAY COURT COSTS MAY RESULT IN

THE TRIAL COURT'S ORDERING HIM TO PERFORM COMMUNITY SERVICE.

{¶ 42} Jeffery contends that the trial court violated R.C. 2947.23(A)(1) when it failed to notify him at his sentencing hearing of the consequences of his failure to pay court costs.

{¶ 43} R.C. 2947.23(A)(1)(a) provides, in part:

> In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs. At the time the judge or magistrate imposes sentence, the judge or magistrate shall notify the defendant of both of the following:
>
> (i) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.
>
> (ii) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

{¶ 44} The State concedes that the trial court erred in failing to provide the notice required by R.C. 2947.23(A)(1). Both the State and Jeffery agree that an appropriate remedy

would be to remand the case to the trial court for re-sentencing so that proper notification can be provided by the trial court. In his Reply Brief, however, Jeffery goes further and "requests that this Court modify the trial court's judgment by eliminating the requirement that he must perform community service if he does not pay court costs." Reply Brief, p. 7. In support of his request, Jeffery cites *State v. Henderson*, 2d Dist. Montgomery No. 24701, 2012-Ohio-3283. In that case, we wrote, at ¶ 12-13:

> In the case before us * * * the error is in the trial court's having failed to advise the defendant that he could be required to perform community service in lieu of paying court costs * * * . Therefore, we agree with the State that Henderson can receive a complete remedy by eliminating the possibility that he can ever be required to perform community service in lieu of paying court costs; if the performance of community service is not a possibility, then he is not prejudiced by the trial court's having failed to inform him of that possibility.

> The State has indicated that it would be satisfied with this solution, even though it eliminates the possibility that Henderson can ever be required to perform community service if he fails to pay court costs. Accordingly, * * * we accept this as the proper remedy in this case.

{¶ 45} In *Henderson*, the State agreed to a modification of the defendant's sentence to remove the possibility of having to perform community service. This was understandable because the defendant in *Henderson* was sentenced to life in prison without the possibility of parole. The State has not agreed to a similar modification in this case. We see no reason to

make this modification based on the facts before us. Therefore, the case will be remanded for the proper imposition of court costs.

{¶ 46} The Fourth Assignment of Error is sustained.

## VII. Conclusion

{¶ 47} Jeffery's Fourth Assignment of Error having been sustained, and his other assignments of error having been overruled, that part of the judgment of the trial court imposing court costs is Reversed, the judgment of the trial court is Affirmed in all other respects, and this cause is Remanded for the re-imposition of court costs consistent with this opinion.

· · · · · · · · · · · · ·

FROELICH and HALL, JJ., concur.


Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
Kristopher A. Haines
Hon. Michael Tucker