[Cite as *State v. Parson*, 2013-Ohio-1069.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25123 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-2827 |
| v. | : | |
| | : | |
| TYREE S. PARSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of March, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JEFFREY T. GRAMZA, Atty. Reg. #0053392, Talbott Tower, Suite 1210, 131 North Ludlow Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Tyree S. Parson appeals from his conviction and sentence on charges of murder and having a weapon while under disability.

{¶ 2} The appellant advances three assignments of error. The first two challenge the legal sufficiency and manifest weight of the evidence to support his murder conviction. The third concerns the trial court's failure to inform him at sentencing that he could be ordered to perform community service if he fails to pay court costs.

{¶ 3} The present appeal stems from the fatal shooting of Dequan Smith. The shooting occurred outside of a Dayton-area apartment on the night of August 13, 2011. Just before the shooting, Joanna Glover and Jerome Bogle were sitting in a parked car near the apartment waiting to pick up Smith and Danny Parson, the appellant's cousin. When Danny Parson reached the car, he attempted to open the rear door. Smith also approached the car with the appellant following him on foot. A short time earlier, Smith and the appellant had been overheard arguing.

{¶ 4} Glover testified at trial that while she was talking to Bogle she heard gunfire and felt a bullet strike the parked car. (Trial Tr. at 497). She looked up and saw the appellant holding a chrome semi-automatic handgun by his side. (*Id*. at 497-499). Glover did not actually see the appellant shoot Smith because she was not looking, but she did not see anyone else present with a gun. (*Id*. at 513-514). According to Glover, Smith got into the back seat and announced that he had been "hit." (*Id*. at 502). Bogle and Glover proceeded to drive to the hospital, but Smith died on the way. (*Id*. at 505).

{¶ 5} Bogle also testified at trial. He recalled sitting and talking to Glover as Danny Parson and Smith walked up to his car. (*Id*. at 752, 755). According to Bogle, the appellant then came around a corner and fired a shot that struck Smith. (*Id*. at 755-757, 761-762). On cross examination, Bogle stated that he was looking at Smith and did not see a "flash" from the gun. (*Id*. at 784, 787).

{¶ 6}    The State also presented testimony from Danny Parson. He testified that he heard a shot as he and Smith were trying to get into Bogle's car. (*Id*. at 620-621). Parson turned and saw Smith holding his side. (*Id*. at 622). Parson also saw the appellant walking away from the front of Bogle's car immediately after the shot. (*Id*. at 624). The appellant was only ten to twelve feet away at the time. (*Id*. at 708). Parson did not see the appellant pull or shoot a gun. (*Id*. at 623). Nor did he see the appellant holding a gun. (*Id*. at 731-732).

{¶ 7}    The appellant's former girlfriend, Sheila Elam, testified about speaking to the appellant on the telephone after the shooting. When she asked him what had happened, the appellant responded "that he had shot and killed somebody." (*Id*. at 459). According to Elam, the appellant told her he was "laying low." (*Id*. at 459). Police apprehended the appellant in September 2011 after receiving a tip concerning his whereabouts.

{¶ 8}    Based on the evidence presented at trial, the appellant was found guilty of felony murder (causing the death of another as a proximate result of committing felonious assault by causing serious physical harm), felony murder (causing the death of another as a proximate result of committing felonious assault by means of a deadly weapon), and having a weapon while under disability. The trial court merged the felony-murder convictions for purposes of sentencing and imposed a sentence of fifteen years to life in prison. The trial court imposed a concurrent three-year prison sentence for having a weapon while under disability. Finally, the trial court merged two firearm specifications and imposed a consecutive three-year prison sentence for them. The result was an aggregate prison sentence of eighteen years to life.

{¶ 9}    In his first two assignments of error, the appellant argues that his murder conviction is based on legally insufficient evidence and is against the manifest weight of the evidence. In support, he contends no one actually saw him shoot Smith and no one testified

that he shot Smith. As a result, he reasons that the murder conviction cannot stand.

{¶ 10} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 11} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} With the foregoing standards in mind, we conclude that the appellant's murder

conviction is supported by legally sufficient evidence and is not against the weight of the evidence. Although Glover did not see the appellant shoot Smith, she looked up immediately after hearing the shot and saw the appellant standing nearby holding a handgun by his side. Glover did not see anyone else present with a gun. As for Bogle, he did testify that the appellant shot Smith.[1] Based on Bogle's cross-examination testimony, however, it is not explicitly clear whether he actually saw the shot or whether he inferred that the appellant was the shooter. As set forth above, Bogle acknowledged that he was looking at Smith and did not see any gunfire "flash" (which he presumably would have if he had been looking at the appellant because the shooting occurred at night). Finally, Danny Parson testified that he saw the appellant walking away from the front of Bogle's car immediately after the shot.

{¶ 13} Although the foregoing witnesses may not have seen the appellant shoot Smith, their testimony supports a finding that he did. Glover's testimony is particularly noteworthy. She heard a shot, saw the appellant (and no one else) holding a gun, and saw Smith with a gunshot wound. Glover's testimony constitutes strong circumstantial evidence that the appellant shot Smith. This conclusion is supported by Danny Parson's testimony that he saw the appellant walking away from Bogle's car immediately after the shot. Finally, the appellant's conviction is supported by Elam's testimony about his confession "that he had shot and killed somebody." Smith was not identified in this conversation by name, but Elam testified that the appellant said he shot his victim in the leg and hit a main artery. That scenario is consistent with the coroner's testimony about Smith's cause of death. Having

---

[1] In his brief, the appellant claims Bogle admitted that did not see anyone shoot Smith. The appellant cites testimony from page 761 of the trial transcript in support. (Appellant's brief at 4). We don't interpret that testimony so narrowly. Moreover, at page 784, Bogle said, "He [Smith] turned around, and faced him [the defendant], and boom, there it was." A similar statement appears on page 785.

reviewed the record, we believe a rational trier of fact could have found the appellant guilty of murder for shooting and killing Smith. The evidence does not weigh heavily against his conviction. The first two assignments of error are overruled.

{¶ 14}   In his third assignment of error, the appellant contends the trial court erred in failing to advise him at sentencing that he could be ordered to perform community service if he fails to pay court costs. As a result, the appellant asks us to remand the case for resentencing, to waive court costs, or to modify the trial court's judgment to eliminate the possibility that he might be required to perform community service.

{¶ 15}   For its part, the State concedes the trial court erred in failing to advise the appellant about the consequences of not paying court costs. The State asserts that the appropriate remedy is to eliminate the possibility of community service in lieu of court costs.

{¶ 16}   Upon review, we agree that the trial court erred in failing to advise the appellant, pursuant to R.C. 2947.23, that he could be required to perform community service if he fails to pay court costs. We also agree with the State that the appropriate remedy is to modify the trial court's judgment by eliminating the possibility that the appellant can be required to perform community service in lieu of court costs. We adopted the same remedy in *State v. Henderson*, 2d Dist. Montgomery No. 24701, 2012-Ohio-3283, which involved an aggravated-murder conviction. In *Henderson*, we noted that the imposition of court costs was not erroneous. Therefore, we found no basis to vacate court costs. We further reasoned that the defendant could "receive a complete remedy by eliminating the possibility that he can ever be required to perform community service in lieu of paying court costs; if the performance of community service is not a possibility, then he is not prejudiced by the trial court's having

failed to inform him of that possibility."[2] *Id.* at ¶12.

{¶ 17} Here the State has expressed satisfaction with the remedy we adopted in *Henderson*, and the appellant has proposed that remedy as an option. Therefore, based on *Henderson*, we sustain the appellant's third assignment of error. The trial court's judgment is modified by eliminating any possibility or requirement that the appellant perform community service in lieu of court costs. As modified, the trial court's judgment is affirmed. Consistent with *Henderson*, the cause is remanded "for the trial court to make whatever record of the modification of its judgment entry may be appropriate." *Id.* at ¶15.

. . . . . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Jeffrey T. Gramza
Hon. Steven K. Dankof

---

[2] *Henderson* is distinguishable from the present case insofar as the defendant there received a sentence of life in prison without parole. That fact, however, was not the primary basis for our ruling. Our analysis presumed that the defendant someday might be released. We noted that dispensing with the possibility of community service in lieu of paying court costs would provide him with a complete remedy to which the State did not object. In a second case, *State v. Jeffery*, 2d Dist. Montgomery No. 24916, 2013-Ohio-504, which involved rape, kidnapping, and an aggregate twelve-year prison term, we recently declined to modify the defendant's sentence to remove the possibility of community control where the trial court failed to advise about the consequences of not paying court costs. Instead, we remanded for resentencing. In *Jeffery*, however, we stressed that the State did not agree to the modification. Unlike *Jeffery*, the State does agree to modification in the present case. Moreover, we find the modification appropriate in light of the appellant's potential life sentence.