[Cite as *State v. Feagin*, 2014-Ohio-5133.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 14CA11 |
| | : | |
| TERRY J. FEAGIN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Richland County Court
of Common Pleas, Case No. 2013 CR
0728 D

JUDGMENT:                              AFFIRMED

DATE OF JUDGMENT ENTRY:      November 14, 2014

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

JAMES J. MAYER, JR.                    WILLIAM T. CRAMER
RICHLAND CO. PROSECUTOR        470 Olde Worthington Road, Ste. 200
JOHN C. NIEFT                              Westerville, OH 43082
38 South Park St.
Mansfield, OH 44902

*Delaney, J.*

{¶1}   Appellant Terry J. Feagin appeals from the Sentencing Entry of January 23, 2014 of the Richland County Court of Common Pleas.  Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   This case arose on October 12, 2013 around 12:30 a.m. in the Richland County Jail during "commissary," a time period when inmates are permitted to buy food and supplies.  Inmates often stay up all night talking and drinking coffee during commissary.  Appellant, Jason Jarvis, and Austin Risner were inmates in the jail, in the same pod.

{¶3}   Earlier that day, appellant was in the shower when Risner was "doing squats" in the bathroom outside the shower.  Appellant confronted Risner and asked why he was working out in the bathroom while someone else was showering.  Risner left the bathroom and the confrontation ended without further incident.

### The Assaults

{¶4}   Later, during commissary, an inmate remarked upon a newspaper photograph of a high-school girls' volleyball team, stating the girls would be 18 when he got out of jail.  In reply, Risner stated something along the lines of "don't judge a book by its cover" because "his neighbor was 12 years old but looked like she was in high school."  Appellant approached Risner, stating he had a 12-year-old daughter and accusing Risner of being a pedophile.  Risner stated he meant nothing by the statement.  As Risner sat at a table eating, appellant approached him and punched him several times in the left side of his face.

{¶5}   During this altercation, a group of inmates sat nearby playing cards. Shortly after the assault by appellant, one of those inmates, Jason Jarvis, stood up, grabbed Risner by the back of the head, and struck him repeatedly with uppercut punches from behind.

{¶6}   Reportedly Risner did not immediately report the assaults.  He cleaned himself up and went about his business, but soon the pain around his eye socket became worse and other inmates told him "something was wrong with [his] face." Risner initially told corrections officers he fell in the shower, but after he was separated from other inmates he reported the assaults.

{¶7}   Risner was transported to MedCentral Hospital where he was found to have "complex facial fractures," meaning multiple bones of his face were moved out of place.  He was transported to Grant Hospital in Columbus for specialized facial surgery.

*The Jail Investigation Yields Video of the Incident*

{¶8}   Most areas of the Richland County Jail are on camera and corrections officers were able to find film of the assaults.  Appellant and Jarvis were identified from the videotape by corrections officers and by Risner.  Appellant was disciplined with 10 days in "lockdown" and was moved to a maximum-security pod.

{¶9}   During the jail discipline process, appellant was granted a hearing with Sgt. James.  Appellant told James he pushed Risner but did not hit him and Risner was fine when appellant walked away from him.  James watched the jail video, however, and determined appellant assaulted Risner by punching him.

*Indictment, Trial, and Conviction*

{¶10} Appellant was charged by indictment with one count of aiding and abetting felonious assault pursuant to R.C. 2903.11(A)(1), a felony of the second degree. Appellant entered a plea of not guilty and the case proceeded to trial by jury.

{¶11} Appellee's evidence at trial consisted of the testimony of several corrections officers, Risner, and the doctor who evaluated Risner at MedCentral. Appellee's exhibits included the videotape of the incident at the jail, Risner's medical records, and photos of his injuries.

{¶12} Appellant was the only witness in his own defense. He testified to the verbal confrontations with Risner which culminated when he "mugged [Risner's] face" with his finger, causing him to fall back. On direct, appellant testified he walked away and later heard the sounds of a fight, looked up, saw Jarvis assaulting Risner, and heard a loud crack. Appellant stated he had no contact with Jarvis regarding the incident and did not encourage him to assault Risner.

{¶13} On cross examination, appellant was confronted with the jail video and admitted he, too, punched Risner in the face.

*Corrections Officer James is Voir Dired by the Trial Court*

{¶14} Outside the presence of the jury, after appellant's testimony, Sgt. James was brought back to be voir dired by the trial court over the matter of lockdown. During his testimony, James was asked whether he told appellant Jarvis received more lockdown time than he did. James responded he didn't know how much lockdown time Jarvis received because he didn't recall investigating Jarvis.

{¶15} During the voir dire outside the presence of the jury, the trial court stated appellant alleged James had changed his testimony. James explained he was confronted by appellant at the jail after his testimony and called a liar, so he reviewed the discipline records and discovered a different corrections officer had investigated Jarvis. Thus, James had testified truthfully he did not know the outcome of the Jarvis investigation or how much lockdown time each received.

{¶16} During this voir dire, James stated he asked other inmates present if anyone had anything to say in defense of appellant, and no one came forward. Several days later, however, an inmate trustee named Williams told him Risner's face made a cracking sound when he was struck by Jarvis.

{¶17} Defense counsel stated this was the first time he was told the trustee's name and requested a continuance, which was denied. (T. 244).

*Jury Question and Verdict*

{¶18} The trial court instructed the jury upon aiding and abetting felonious assault and the lesser included offense of simple assault. During deliberations, the jury asked whether they could "seperate (*sic*) the felonious assault from the aiding and abetting in the charge or do we have to find the * * * entire charge." The trial court responded, over objection by appellant, " * * * [Y]ou may return a verdict of guilty for aiding and abetting felonious assault if you find beyond a reasonable doubt that [appellant] either knowingly caused * * * the serious physical harm to Mr. Risner himself or that he aided and abetted, under the definition in your instructions, Mr. Jarvis in causing serious physical harm to Mr. Risner."

{¶19} The jury found appellant guilty of felonious assault and the trial court sentenced him to a prison term of 6 years.

{¶20} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶21} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶22} "I. APPELLANT WAS DEPRIVED OF HIS RIGHT TO A UNANIMOUS VERDICT UNDER PRINCIPLES OF DUE PROCESS AND CRIM.R. 31(A) WHEN THE TRIAL COURT INSTRUCTED THE JURY THAT THEY COULD FIND HIM GUILTY OF AIDING AND ABETTING FELONIOUS ASSAULT IF THEY FOUND THAT HE WAS EITHER THE PRINCIPAL OR HE AIDED THE PRINCIPAL."

{¶23} "II. APPELLANT'S STATE AND FEDERAL DUE PROCESS RIGHTS WERE VIOLATED BY HIS CONVICTION FOR AIDING AND ABETTING FELONIOUS ASSAULT BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION."

{¶24} "III. APPELLANT'S CONVICTION FOR AIDING AND ABETTING FELONIOUS ASSAULT WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE."

{¶25} "IV. THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO ALLOW A CONTINUANCE SO THAT THE DEFENSE COULD SUBPOENA A RELEVANT WITNESS."

**ANALYSIS**

II., III.

{¶26} In his second and third assignments of error, appellant argues his conviction is against the manifest weight and sufficiency of the evidence. We disagree.

{¶27} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶28} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the

evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶29} The jury found appellant guilty of one count of aiding and abetting felonious assault pursuant to R.C. 2903.11(A)(1): "No person shall knowingly * * * [c]ause serious physical harm to another * * *." R.C. 2923.03(A)(2) states: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." We further note R.C. 2923.03(F) states, "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."

{¶30} Appellant's arguments are premised upon the following characterization of the evidence: Jarvis was the "principal offender" whose "more vicious and sustained assault" upon Risner caused the serious physical harm. Upon our review of the record, however, we find the evidence belies this assumption, most notably in the video showing appellant striking Risner not once but multiple times. Appellant's arguments here are based upon his own self-serving testimony which the jury was free to accept or reject.

{¶31} Appellant further argues aiding and abetting requires "some sort of active involvement beyond mere presence at the crime scene" while acknowledging "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or **incited** the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from

the circumstances surrounding the crime." (Emphasis added.) *State v. Johnson*, 93 Ohio St.3d 240, 245, 2001-Ohio-1336, 754 N.E.2d 796 (2001). "Incite" means "[t]o provoke or stir up (someone to commit a criminal act, or the criminal act itself)." Black's Law Dictionary (9th ed. 2009). Viewing the evidence in the light most favorable to the prosecution, the jury could reasonably find appellant incited Jarvis to the subsequent attack on Risner.

{¶32} Appellant directs our attention to a "mob fight" rule first articulated by the Ohio Supreme Court in *Woolweaver v. State*, 50 Ohio St. 277, 34 N.E. 352 (1893), arguing his mere presence at the scene does not rise to the level of the cooperation, connection, or conspiracy required for aiding and abetting. We note, though, *Woolweaver* holds "In such case, to constitute the person engaged in the fight an aider or abettor of the homicide, it should appear, either that there was a prior conspiracy, or that he purposely incited or encouraged the slayer, **or did some overt act himself with an intent to cause the death of his antagonist**." (Emphasis added.) *Woolweaver v. State*, 50 Ohio St. 277, 34 N.E. 352 (1893), paragraph two of the syllabus. In the instant case, appellant was not merely present at the scene when an independent actor suddenly inflicted serious physical harm upon the victim. The video depicts what is in fact a sustained assault first by appellant, followed shortly thereafter by Jarvis; the ferocity of appellant's attack is such that the jury could reasonably conclude he caused the serious physical harm.

{¶33} We have previously concluded "* * * a defendant violently striking the eye area of another person, who had already been knocked to the ground, must be held to know that this action will probably cause serious physical harm to such person." *State*

*v. Freeman*, 5th Dist. Stark No. 2010 CA 00019, 2010-Ohio-5818, ¶ 16.  Such is the case here.

{¶34} We find reasonable triers of fact could have found, beyond a reasonable doubt, appellant knowingly caused serious physical harm to Risner for purposes of R.C. 2903.11(A)(1). Appellant's conviction upon felonious assault is supported by sufficient evidence.

{¶35} Further, upon review of the trial record, including the video of the incident, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered.

{¶36} Appellant's second and third assignments of error are overruled.

I.

{¶37} In his first assignment of error, appellant argues the trial court erred in its response to the jury question stating appellant is guilty of aiding and abetting felonious assault if they found him either to be the principal or that he aided the principal.  We disagree.

{¶38} Appellant asserts he was denied a unanimous verdict because the jury could find he was either the principal or and aider and abettor.  A unanimous jury verdict is required by Crim.R. 31(A). "Although Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied." *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 38, citing *Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). "[A] 'jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say,

which of several possible means the defendant used to commit an element of the crime.' " Id., quoting *Richardson*.

{¶39} *Gardner*, supra, does not support appellant's argument. In that case, the defendant's aggravated-burglary conviction was vacated at the appellate level because "the jury instructions did not specify that the jury needed to agree unanimously as to which criminal offense [the defendant] intended to commit during the course of the aggravated burglary."[1] Id. at ¶ 2. The Ohio Supreme Court's analysis focuses on the third element of "any criminal offense," the issue being whether jurors must agree unanimously *which* criminal offense a defendant intended to commit during a burglary. *Gardner*, 2008-Ohio-2787 at ¶ 32, 37. The Court observed that although Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied. *Id.,* 2008-Ohio-2787 at ¶ 38, citing *Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). The Court reinstated the defendant's conviction for aggravated burglary, distinguishing between "alternative-means" and "multiple-acts" fact scenarios:

> In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In

---

[1] To convict the defendant of aggravated burglary pursuant to R.C. 2911.11(A)(2), the state was required to establish (1) he trespassed in the victim's home by use of force, stealth, or deception, (2) while someone other than his accomplice was present, (3) with the purpose to commit "any criminal offense" inside, (4) while carrying a deadly weapon or dangerous ordnance.

reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt.

In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt. (Citations omitted.)

*State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 49-50.

{¶40} We find the instant case to be an alternative-means case, not a multiple-acts case, the issue being what caused the victim's serious physical harm. See *State v. Jeffery*, 2013-Ohio-504, 986 N.E.2d 1093, ¶ 34-35 (2nd Dist.). The jury was not required to agree whether appellant's punches caused the serious physical harm (his own conduct) or whether Jarvis' punches caused the serious physical harm (appellant complicit in Jarvis' conduct) because each is an alternative form of aiding and abetting felonious assault. Id. There is no distinction between a defendant convicted of complicity or as a principal offender. Id., citing R.C. 2923.03(F).

{¶41} Having found this case to be an alternative means case, we "must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt." *Jeffery*, supra, 2013-Ohio-504 at ¶ 35, citing *Gardner* at ¶ 49. As we have already determined in our analysis of appellant's second and third assignments of error, supra, we conclude a rational trier of fact could have found each means of committing complicity to felonious assault proved beyond a reasonable doubt.

{¶42} Appellant was not deprived of a unanimous jury verdict and his first assignment of error is therefore overruled.

IV.

{¶43} In his fourth assignment of error, appellant argues the trial court should have permitted a continuance so he could subpoena an alleged witness to the assault. We disagree.

{¶44} Sgt. James identified the alleged witness during the voir dire after appellant's testimony. Defense trial counsel stated this was the first he heard of the statement and the trustee's name (Williams). Specifically, counsel stated: "Well, I didn't know. I don't know. All I knew was [the corrections officer] told [appellant] that somebody told him they heard a crack. And [appellant] said, well, Sergeant James told him that. I never heard anybody's name." T. 243. The trial court denied the request for continuance because appellant was aware of Williams' statement and identity well in advance of trial although he did not communicate the information to counsel.

{¶45} A trial court's decision to deny a continuance which would otherwise enable a defendant to exercise his constitutionally-protected right to offer the testimony

of witnesses and compel their attendance may, in some circumstances, constitute a denial of due process and we review the decision for an abuse of discretion. *State v. Blankenship*, 5th Dist. Licking No. 2010-CA-118, 2011-Ohio-2984, ¶ 13. First, though, "[w]hen the reason for a continuance is to secure the attendance of a witness, 'it is incumbent upon the moving party to show that such witnesses would have given substantial favorable evidence and that they were available and willing to testify.'" Id., citations omitted.

{¶46} In the instant case, defense trial counsel was admittedly aware, prior to trial, someone made a statement about the victim's face "cracking." James testified and was cross-examined, but no one asked him about witness statements. No explanation was offered why appellant could not have learned Williams' identity by asking James prior to trial or even on the stand. The Williams matter only came up at all because James was brought back, outside the presence of the jury, to explain a discrepancy about which corrections officer investigated and disciplined Jarvis.

{¶47} Moreover, no proffer of anticipated testimony was made for the trial court to weigh in determining whether appellant's rights would be jeopardized if the continuance was not granted. *Blankenship*, supra, 2011-Ohio-2984 at ¶ 18. It is not evident from the record that Williams would have been willing to testify or what his testimony would have been; the statement about the "crack" was hearsay as presented by James.

{¶48} Under these circumstances, we are unable to find the trial court abused its discretion in denying appellant's motion for continuance. Appellant's fourth assignment of error is overruled.

**CONCLUSION**

{¶49} Appellant's four assignments of error are overruled and the judgment of the Richland County Court of Common Pleas is affirmed.

By:  Delaney, J. and

Gwin, P.J.

Baldwin, J., concur.