[Cite as *State v. Crump*, 2019-Ohio-2219.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :
                                      No. 107460

    v.                           :

TEQUILA CRUMP,                          :

    Defendant-Appellant.         :

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART
                   AND REMANDED
**RELEASED AND JOURNALIZED:** June 6, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-615579-B

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecutor, and Anna Faraglia and Owen M. Patton, Assistant County Prosecutors, *for appellee.*

The Law Office of Jaye M. Schlachet, and Eric M. Levy, *for appellant.*

PATRICIA ANN BLACKMON, J.:

{¶ 1} Defendant-appellant Tequila Crump appeals from her convictions for reckless homicide and child endangering. She assigns eleven errors for our

review.[1]  Having reviewed the record and the controlling case law, we affirm the convictions, but we reverse a portion of the sentence and remand for resentencing.

{¶ 2}  On October 17, 2016, Crump's five-year-old daughter, T.M., sustained severe burns to her hands and forearms.  Several months later, on March 17, 2017, T.M. died.  Crump and her partner, Ursula Owens ("Owens"), were subsequently indicted in a 15-count indictment in connection with both incidents.  They were charged with aggravated murder, murder, felonious assault, and endangering children.  The matter proceeded to a jury trial on May 31, 2018.

{¶ 3}  Crump's former partner, Sabrina McCloud ("McCloud"), testified that she met Crump in Virginia while Crump was pregnant with T.M.  T.M. developed normally but was hyperactive.  McCloud eventually enrolled T.M. in preschool.  At that point, T.M. was toilet-trained and knew letters, numbers, and colors.  McCloud testified that T.M. once touched a hot stove, but she was able to quickly move her hand away to avoid being burned.  In 2016, Crump met Owens and moved to Cleveland.  T.M. stayed with McCloud for several weeks before joining Crump and Owens in Cleveland.

{¶ 4}  Sierra Giles ("Giles"), Owens's former partner, testified that in 2006, she lived with Owens and her son, R.O.  According to Giles, Owens was the main disciplinarian and used corporal punishment on R.O.  By 2012, Giles and Owens

---

[1] *See* appendix.

were no longer living together. They formally agreed that Giles would have custody of R.O., and Owens would have weekend visitation.

{¶ 5} With regard to the events of October 17, 2016, Charles Yowler, M.D. ("Dr. Yowler"), former director of the burn unit at MetroHealth Medical Center ("MetroHealth"), testified that T.M. was admitted to the burn center following a referral from Rainbow Babies and Children's Hospital. T.M. had second-degree burns to her left hand and forearm and "dead [skin] third-degree burns" to her right hand and forearm. The third-degree burns extended all the way around her wrist and distal forearm. Although Crump and T.M. maintained that the burns occurred while T.M. was washing her hands, Dr. Yowler expressed concern that the injury did not happen as described. He noted that T.M. said that "I was screaming when my hands were under water," and also said that Crump was with her in the bathroom at the time of the burn. Dr. Yowler photographed the injuries and referred the matter to the Cuyahoga County Department of Children and Family Services ("CCDCFS").

{¶ 6} Dr. Yowler and Anjay Khandelwal, M.D. ("Dr. Khandelwal") subsequently determined that T.M.'s injuries required surgical skin grafting. The graft was ultimately successful, and T.M. was discharged back to Crump's care on October 29, 2016.

{¶ 7} MetroHealth pediatric social worker Kathryn Mahoney ("Mahoney") testified that Crump maintained that T.M. was burned while alone in the bathroom and washing her hands. Crump and Owens then ran cold water over T.M.'s hands and wrapped them in clean dressings. The following morning, they observed

blistering, so they brought T.M. to the hospital. In a subsequent interview, Crump told Mahoney that Owens had turned on only the hot water before T.M. washed her hands then inadvertently prolonged the exposure to the hot water by draping a hot cloth over T.M.'s hands. Crump also indicated that T.M. had developmental issues and had an individualized education plan ("IEP") at her former school in Virginia but was not presently attending school.

{¶ 8} Christina Quint ("Quint"), a former CCDCFS social worker, testified that before the burn incident, she investigated the family regarding a claim that Crump punched and smacked T.M. in the face. However, after speaking with various people living at the home, Quint determined that the claim of abuse was false. During the investigation of T.M.'s burn, Quint noted that T.M. did not seem fearful of Crump or Owens and had no other injuries. Quint ultimately determined that the abuse claim for the burn was "unsubstantiated" or not conclusively proven.

{¶ 9} Marquetese Betts ("Betts"), a supervising social worker for CCDCFS, testified that she reviewed the "unsubstantiated" abuse finding. Betts noted that T.M. said that no one hurt her and there were no other signs of abuse. However, Betts exercised her discretion to keep the family's file open in light of continuing concerns for T.M. and the family's need for community resources.

{¶ 10} Irene Dietz, M.D. of MetroHealth ("Dr. Dietz"), testified that she performed a follow-up examination of T.M. in February 2017. Crump reported that T.M. was born prematurely and had developmental issues. Crump told Dr. Dietz that she had lost the child's birth certificate and other important papers, so the child

was not enrolled in school. Dr. Dietz recorded that T.M. appeared extremely small for her age and had symptoms of malnourishment, including abdominal dissention and thin extremities. Dr. Dietz recommended that T.M. take a nutritional supplement. Nothing in the history provided by Crump and Owens indicated that T.M. experienced seizures.

{¶ 11} Dr. Dietz examined T.M. again on March 7, 2017. She observed that the burns and skin grafts appeared to be healed. T.M.'s chest was clear, and she also gained five pounds since the last visit. Dr. Deitz noted multiple scars but no acute bruising. Dr. Dietz acknowledged that T.M. complained of stomach aches during both the February 2017 and March 2017 examinations. She also acknowledged that she recommended further blood tests.

{¶ 12} CCDCFS social worker Ada Johnson ("Johnson") testified that Crump's family resided in the home of Yamika Brock ("Brock"). Johnson did not observe peeling paint in the house, but she acknowledged that photographs of the home show that paint was peeling in some of the rooms. T.M. did not have a bed and slept with Crump and Owens, so Johnson arranged for her to get a bed. Johnson also accompanied the family to the follow-up medical appointments. Neither Crump nor Owens raised concerns about lead exposure during the appointments. However, Johnson acknowledged that T.M. had "weird marks" on her skin.

{¶ 13} With regard to the events of March 17, 2017, Cleveland paramedic Samuel Wilson ("Wilson") testified that when he arrived at the home at 10:06 p.m., T.M. was unconscious. Her pupils were fixed and dilated, indicating possible brain

injury. She had vomit in her airway, her heart rate was 60, and her respiratory rate was four breaths per minute. T.M.'s Glasgow Coma value, a scale for assessing brain injury, was 3 out of a possible score of 15, indicating a severe injury with a poor prognosis. Wilson did not see signs of bodily trauma, however. Crump informed Wilson that T.M. had no prior history of seizures, but she had a seizure at noon and had been sleeping since that time.

{¶ 14} University Hospitals Pediatric Social worker Kimberly Foley ("Foley") testified that according to Crump, T.M. had a seizure at noon that she "sle[pt] off." Crump maintained that later that afternoon, she saw T.M. playing in her room, but by 10:00 p.m., T.M. was unconscious and was gasping for air.

{¶ 15} Pediatric Intensive Care Attending Physician Ann Stormorken ("Dr. Stormorken") testified that she was part of the team of physicians who treated T.M. Crump told Dr. Stormorken that T.M. was completely healthy earlier in the day and was not exposed to any illness, but at 11:00 a.m. T.M. had a seizure that lasted between three and five minutes. T.M. reportedly fell asleep until around 4:00 p.m. then slept again until 10:00 p.m. At that point, T.M.'s breathing was labored, so Crump called 911. Crump did not mention concerns about lead poisoning to Dr. Stormorken. Dr. Stormorken denied learning from Crump that prior to the 911 call, T.M. had six protracted seizures.

{¶ 16} Dr. Stormorken diagnosed T.M. as having a severe brain injury that was not likely to be survivable. Additionally, there was evidence of rib fractures from an older injury. Dr. Stormorken testified that there is no connection between

seizures and life-threatening brain injuries.  She also testified that lead poisoning does not manifest as acute brain injury, and an ordinary spanking would not result in the type of acute brain injury that T.M. displayed.

{¶ 17}   Brock, owner of the house where Crump's family resided, testified that in the afternoon of March 17, 2017, she saw Crump checking T.M. with a stethoscope.  Later, when the police arrived, Owens instructed Brock to tell them that T.M. experienced a seizure.

{¶ 18}   Giles's 14-year-old son, R.M., testified that Owens's son, R.O., is his good friend.  R.M. spent the night at Crump's house on March 17, 2017; he and R.O. played video games.  There was nothing unusual about T.M.'s appearance or health, but the boys were forbidden from giving her water so that she would not wet herself during the night.  At around 5:00 a.m., R.M. heard Owens yelling and T.M. crying. R.M. then heard two thuds, like the sound of something hitting the floor and the wall.  R.M. saw Crump and Owens standing next to T.M. who was on the floor in a "locked" position or "seized up" with her forearms against her chest.  At that point, Crump carried T.M. to the bathroom and began splashing water on her face.  When that failed to awaken T.M., Crump placed her on a bed and shook her.  Crump and Owens searched the internet for information about CPR and seizures, then R.O. performed CPR.  Eventually, R.M. and R.O. left to get something to eat.  When they returned, T.M. was still unconscious, and R.O. continued to check on her throughout the day.  Later that night, paramedics arrived and took T.M. to the hospital.

{¶ 19} R.O. testified that T.M. generally got into trouble for wetting herself or "sneaking water," and Owens usually disciplined T.M. by punching or pushing her. After T.M. was burned, Owens maintained that T.M. was burned in the bathtub.

{¶ 20} R.O. stayed with Owens and Crump on March 17, 2017. When he arrived, T.M. was "in trouble" and was scrubbing urine from the floor using bleach. After a few minutes, T.M. "blacked out." Crump rushed T.M. into the bathroom, splashed water on her face and revived her. Later, R.O. and R.M. played with T.M. until it was time for her to go to sleep. The boys went to sleep at around midnight but were awakened by Crump and Owens shouting. According to R.O., Owens was upset that T.M. had plugged in a bedroom fan, so Crump went into the room and struck T.M. repeatedly on the arm. Owens then said, "that's not how you do it." At that point, Owens pushed T.M. to the floor, then pushed her down again after T.M. got up. Owens struck T.M. on her head and body, stepped on T.M.'s back, then picked her up and threw her. According to R.O., T.M.'s head struck the mirror of a dresser in the room. T.M. lost consciousness, and Crump told Owens to stop. Crump attempted to revive T.M. by splashing water on her face. Crump considered whether T.M. "was faking," so she put her on the bed and shook her. After a few minutes, T.M.'s arms were down and she was no longer able to swallow. R.O. checked her heart with a stethoscope and heard slow beats.

{¶ 21} Later that morning, R.O. and R.M. left for a short time to get something to eat. When they returned, T.M. was still unconscious, Crump was searching for information on her phone, and Owens was watching television. R.O.

asked if they should call 911 but Crump said no, and he was too afraid to call for help without permission. After a few hours, Crump said that T.M.'s heart was stopping, so they called 911. On cross-examination, R.O. acknowledged that T.M. complained of having a headache before she went to sleep.

{¶ 22} Elizabeth Mooney, D.O. ("Dr. Mooney") a forensic pathologist with the Cuyahoga County Coroner's Office, performed an autopsy on T.M. Dr. Mooney determined that T.M. died from multiple blunt force injuries that severed a blood vessel and caused a brain hemorrhage and a cervical spinal hemorrhage. T.M. also suffered bruises to her lungs, rib fractures, and back injuries. Additionally, T.M. was malnourished and had older injuries, including rib fractures and a fractured clavicle.

{¶ 23} Cleveland Police Homicide Detective Jody Remington ("Det. Remington") executed a search warrant for Crump's home and also interviewed Crump and Owens. Crump stated that the October 2016 burn resulted from T.M. "trying to run a bath." As to the events of March 17, 2017, Crump stated that she was very angry with T.M. for touching a fan and for wetting herself, but she simply pushed T.M. away from her. Later, Crump observed T.M. having a seizure. Phone records show that at 10:48 a.m., Crump visited the website "epilepsy.com." At 7:32 p.m., Crump searched the internet for "recovery after seizure." Owens told Det. Remington that T.M. had two seizures on March 16, 2017. The next morning, T.M. awoke at 8:00 a.m. She reportedly had a tantrum and "threw her head back" when Owens told her to stay in bed. Later that day, after T.M. touched the fan, Owens hit

her with a flip flop then "mushed her head," signaling that T.M. could go and play. T.M. later had another seizure and slept throughout the day.

{¶ 24} Dr. Thomas Young ("Dr. Young") testified for the defense. He stated that the torn blood vessel that Dr. Mooney observed occurred during the autopsy and was not the cause of T.M.'s death. Rather, Dr. Young opined that T.M. died from natural causes after developing a thrombus or blood clot in her brain that caused repeated seizures, loss of blood to the brain, and brain swelling.

{¶ 25} The state presented rebuttal testimony from Cuyahoga County Medical Examiner Dr. Thomas Gilson ("Dr. Gilson.") Dr. Gilson stated that T.M. suffered a trauma that caused a hemorrhage. The hemorrhage in turn produced a clot; the clot did not produce a hemorrhage.

{¶ 26} The defense requested and obtained an instruction on reckless homicide as a lesser included offense of aggravated murder. (Tr. 1866-1867, 1870-1871.) Crump was subsequently convicted of two counts of reckless homicide and seven counts of child endangering with findings that the violation resulted in serious physical harm to the victim. Crump was sentenced to 13 years of imprisonment.[2]

### I. Claimed Denial of Unanimous Verdict

{¶ 27} In the first assigned error, Crump asserts that her conviction for reckless homicide must be vacated. First, she argues that reckless homicide is not a lesser included offense of aggravated murder because the aggravated murder jury

---

[2] Owens was convicted of two counts of reckless homicide, murder, felonious assault, and seven counts of endangering children. She was sentenced to 25 years to life.

instruction for "cause" requires an act that produces a harm, whereas the reckless homicide jury instruction for "cause" includes an act and the failure to act, as well as the natural and foreseeable consequences. Crump also argues that the jury instructions for reckless homicide deprived her of a unanimous verdict because they did not attempt to narrow the jury's finding to a single form of the offense, i.e., by means of aiding and abetting in an act, committing a specific act, or failing to act.

{¶ 28} Beginning with the first portion of Crump's argument, Crump concedes that she requested the reckless homicide instruction. Accordingly, this error was invited by Crump. Under the invited-error doctrine, a party will not be permitted to take advantage of an error that he himself invited or induced. *State v. Teitelbaum*, 2016-Ohio-3524, 67 N.E.3d 85, ¶ 76 (10th Dist.); *State v. Robinson*, 8th Dist. Cuyahoga No. 99917, 2014-Ohio-2973, ¶ 33 ("Therefore, since Robinson requested the jury instruction of which he now complains, he may not now seek to use the instruction to his advantage on appeal."). Further, reckless homicide is a lesser included offense of aggravated murder under R.C. 2903.01(A). *State v. Daniels*, 8th Dist. Cuyahoga No. 93545, 2010-Ohio-3871, ¶ 29. Reckless homicide is also a lesser included offense of aggravated murder under R.C. 2903.01(B). *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 190.

{¶ 29} Crump insists that reckless homicide cannot be a lesser included offense of aggravated murder because each has a different standard jury instruction. The "cause" jury instruction for aggravated murder requires an act that directly produces a harm, but the "cause" jury instruction for reckless homicide includes an

act or failure to act and the natural and foreseeable consequences. *See Ohio Jury Instructions* ("O.J.I."), CR Section 503.01 and Section 417.23.

{¶ 30} However, with particular regard to the issue of "cause," the *Trimble* court stated:

> [A] defendant cannot cause the death of a person under R.C. 2903.01(B) without also causing the death of that person under R.C. 2903.041. In purposely causing the death of another, one has to first become reckless in causing the death of another.

*Id.*

{¶ 31} Moreover, in *State v. Williams*, 5th Dist. Richland No. 95 CA 93, 1996 Ohio App. LEXIS 6174, *35-36 (Dec. 3, 1996), the court concluded that the instruction on a lesser included offense was correct where the court's overall instructions clarified that the definition of "cause" differed from the definition of "cause" for the primary offense. Likewise in this matter, the instruction on the lesser included offense and the primary offense both contained distinct and correct definitions of the "cause" elements.

{¶ 32} Turning to the next portion of Crump's assigned error, we note that Crim.R. 31(A) provides that a jury must return a unanimous guilty verdict. However, "the law on juror unanimity distinguishes between the elements of the crime and the means by which a defendant commits an element." *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 37. In a typical alternative means case, the jury must be unanimous as to the defendant's guilt of the crime charged, but need not be unanimous as to the means by which the crime was

committed.  *See State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 290.  Therefore, the critical inquiry is whether the case involves "alternative means" or "multiple acts."  *Gardner* at ¶ 48*; State v. Hinzman*, 8th Dist. Cuyahoga No. 92767, 2010-Ohio-771, ¶ 30; *State v. McKinney*, 8th Dist. Cuyahoga No. 106377, 2019-Ohio-1118, ¶ 32.

{¶ 33}  In *McKinney*, this court recently explained the distinction as follows:

> "In an 'alternative means' case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged.  Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means.  In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt."  [*Gardner*] at ¶ 49.

> However, in a "multiple acts" case, "several acts are alleged and any one of them could constitute the crime charged.  In these cases, the jury must be unanimous as to which act or incident constitutes the crime.  To ensure jury unanimity in multiple acts cases, we require that either the state elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt."  [*Gardner*] at ¶ 50.

*Id.* at ¶ 33-34.  *Accord State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 183-189 (rejecting unanimous verdict challenge to felony murder, finding that jurors need not be unanimous as to the predicate offense); *State v. Thompson*, 33 Ohio St.3d 1, 514 N.E.2d 407 (1987) (rejecting unanimous verdict challenge, finding that the court did not have to instruct jury that it was required to unanimously find a particular type of rape).

{¶ 34} With regard to the claim of lack of unanimity in distinguishing between aiding and abetting and the principal offense, we begin by noting in *State v. Robinson*, 8th Dist. Cuyahoga No. 99917, 2014-Ohio-2973, this court observed that where a defendant is charged with alternative theories of principal offender or aider and abettor, the jury instructions need not require the jury to unanimously agree on one of these alternative theories so long as they unanimously agree beyond a reasonable doubt that the defendant's actions constituted the offense charged. *Id.* at ¶ 45. This court held that a rational trier of fact could have found Robinson guilty of murder, aggravated robbery, and felonious assault as either the principal offender or an aider and abettor, so unanimous agreement on one of these alternatives in the verdict form was not required. *Id.* at ¶ 46.

{¶ 35} In this regard, felonious assault cases are instructive. *See State v. Feagin*, 5th Dist. Richland No. 14CA11, 2014-Ohio-5133, in which the court explained:

> We find the instant case to be an alternative-means case, not a multiple-acts case, the issue being what caused the victim's serious physical harm. *See State v. Jeffery*, 2013-Ohio-504, 986 N.E.2d 1093, ¶ 34-35 (2nd Dist.). The jury was not required to agree whether appellant's punches caused the serious physical harm (his own conduct) or whether Jarvis' punches caused the serious physical harm (appellant complicit in Jarvis' conduct) because each is an alternative form of aiding and abetting felonious assault. *Id.* There is no distinction between a defendant convicted of complicity or as a principal offender. *Id.*, citing R.C. 2923.03(F).

*Id.* at ¶ 40.

{¶ 36} Moreover, we note that in this matter, substantial evidence supported each alternative means for committing the offense.

{¶ 37} Crump next claims that she was deprived of unanimity on complicity to commit reckless homicide because the state was required to prove that she *knowingly or purposely* aided and abetted in committing the reckless homicide. However, this argument appears to conflate the proof needed for attempt with the proof needed for complicity. That is, R.C. 2923.03(A)(2) states, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall  * * * [a]id or abet another in committing the offense." Further, R.C. 2923.03(F) states,

> Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

*Accord Columbus v. Bishop*, 10th Dist. Franklin No. 08AP-300, 2008-Ohio-6964, ¶ 35; *State v. Dayton*, 3d Dist. Union No. 14-17-03, 2018-Ohio-3003, ¶ 99. Therefore, the aiding and abetting instruction was not required to state that Crump acted "knowingly." *State v. Redding*, 8th Dist. Cuyahoga No. 59988, 1992 Ohio App. LEXIS 972, 21 (Mar. 5, 1992).

{¶ 38} We next consider Crump's assertion that the trial court erred in giving the aiding and abetting instruction in relation to the reckless homicide charge because it was impermissibly premised upon Crump's "after the fact" conduct of failing to get help for T.M. Again, we note that Crump requested the reckless homicide instruction and invited any error. *Teitelbaum*, 2016-Ohio-3524, 67

N.E.3d 85, at ¶ 76.  In any event, considering the merits of the claim, Crump's argument focuses on O.J.I. Section 417.23 that defines "cause" as an "act or failure to act which in a natural and continuous sequence directly produces the death and without which it would not have occurred."

{¶ 39}  R.C. 2903.041(A), the statute prohibiting reckless homicide states that "[n]o person shall recklessly cause the death of another * * *."  The reckless homicide statute indicates that the emphasis is on the fact that the defendant caused the death.  A person acts recklessly "when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result[.]"  R.C. 2901.22(C).

{¶ 40}  The "act" and "failure to act" identified in the causation instruction are simply alternative means of showing the element of cause, and not separate offenses.  That is, there are different means of accomplishing this crime, but the different means do not create separate and distinct offenses.  The jury instructions properly demonstrated that action or failure to act is the means by which the offense is committed and embodies alternative means of causation and not separate offenses. *Accord Villanueva v. State*, 227 S.W.3d 744 (Tx. App.2007).

{¶ 41}  In this regard, felonious assault cases are again instructive.  *See State v. Davis*, 9th Dist. Summit No. 21794, 2004-Ohio-3246, in which the court explained:

> To convict Defendant of felonious assault the State must have proven
> that she "knowingly * * * caus[ed] serious physical harm" to Edgar
> either via an act or a failure to act where the natural and direct

> consequence of that act or failure directly produced the serious physical harm. R.C. 2903.11(A)(1).

*Id.* at ¶ 27. *Accord State v. Spates*, 8th Dist. Cuyahoga No. 100933, 2015-Ohio-1014, ¶ 53-56.

{¶ 42} Therefore, Crump simply raises an alternative means issue, not a multiple acts issue, in establishing the causation element. The jury was not required to agree on the alternative means for the causation element, and substantial evidence supports the alternative means of committing reckless homicide in this case.

{¶ 43} Crump insists that this matter is similar to this court's decision in *State v. Jackson*, 8th Dist. Cuyahoga No. 95920, 2011-Ohio-5920. In *Jackson*, the defendant was charged with felonious assault, domestic violence, and endangering children. Jackson's argument focused on the indictment and asserted that the indictment was duplicative in violation Crim.R. 8(A) and the Due Process Clause of the United States Constitution because the record was not clear as to what occurrences formed the bases of each of the charges. This court concluded that the indictment was duplicitous and the case involved "multiple acts," rather than "alternative means," so the jury could have found him guilty of any of the offenses and may not have reached a unanimous verdict. Clearly, *Jackson's* discussion of alternative means, multiple acts, and Crim.R. 31(A) was dicta and has no application here. *See McKinney*, 8th Dist. Cuyahoga No. 106377, 2019-Ohio-1118, at ¶ 41.

{¶ 44} In accordance with all of the foregoing, Crump's first assigned error lacks merit.

## II. Multiple Acts and Child Endangering

{¶ 45} Crump next argues that the trial court erred in failing to require the state to identify the specific act comprising child endangering in Counts 9 and 15. She asserts that it is unclear whether the conviction under Count 9 is based upon failing to stop Owens from beating T.M., or whether it is from failing to promptly bring T.M. to the hospital on March 17, 2017. Under Count 15, Crump argues that it is unclear whether the conviction for child endangering on October 17, 2016, is from permitting T.M. to have access to scalding water, or whether it is from failing to obtain prompt medical treatment for the burns.

{¶ 46} Both Count 9 and Count 15 alleged violations of R.C. 2919.22(A), alleging that Crump created a substantial risk to the health or safety of the child, by violating her parental duty of care, protection, or support. Applying *Gardner* and *Adams*, and incorporating our discussion as to the first assigned error, we conclude that the precise means in which Crump violated that duty presents alternative means and not multiple acts. Moreover, substantial evidence supports each alternative means of establishing the offense. There is no unanimity violation.

{¶ 47} The second assigned error lacks merit.

## III. Reckless Homicide and Aggravated Murder

{¶ 48} In the third assigned error, Crump argues that the trial court erred in instructing the jury on reckless homicide because reckless homicide for a failure to act is not a lesser included offense of aggravated murder.

{¶ 49} Again, Crump invited any error here by requesting this instruction. *Teitelbaum*, 2016-Ohio-3524, 67 N.E.3d 85, at ¶ 76; *State v. Robinson*, 8th Dist. Cuyahoga No. 99917, 2014-Ohio-2973, at ¶ 33. In any event, as is relevant to the charges in this matter, reckless homicide is a lesser included offense of aggravated murder under R.C. 2903.01(A). *Daniels*, 8th Dist. Cuyahoga No. 93545, 2010-Ohio-3871, at ¶ 29. Reckless homicide is also lesser included offense of aggravated murder under R.C. 2903.01(B). *Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, at ¶ 190. This assigned error therefore lacks merit.

## IV. Instructions on Aiding and Abetting

{¶ 50} In the fourth assigned error, Crump argues that the trial court erred in granting the state's request for an instruction on aiding and abetting. She also complains that the court gave a single aiding and abetting instruction that was not tailored to each specific charge, and that the court also omitted "affirmative defenses of duress, coercion and compulsion."

{¶ 51} The giving of jury instructions is within the sound discretion of the trial court, and we review it for an abuse of discretion. *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, ¶ 42, citing *State v. Howard*, 8th Dist.

Cuyahoga No. 100094, 2014-Ohio-2176, ¶ 35, and *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3d Dist.1993).

{¶ 52} Under R.C. 2923.03(F), a charge of complicity may be stated in terms of this section or in terms of the principal offense. As a result, a jury instruction on complicity is proper as long as "the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 244.

{¶ 53} A complicity instruction was proper here because the evidence could reasonably be found to have proven that Crump was an aider and abettor to Owens. Moreover, this court has approved instructions giving a single aiding and abetting instruction with instructions on other principal offenses. *See State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 23.

{¶ 54} On the issue of duress, we note that duress cannot be asserted as a defense to aggravated murder, but is theoretically available to other felonies. *State v. Getsy*, 84 Ohio St.3d 180, 198, 1998-Ohio-533, 702 N.E.2d 866. Under R.C. 2901.05(A), a defendant has the "burden of going forward with evidence of a nature and quality sufficient to raise" the defense. *State v. Simes*, 8th Dist. Cuyahoga No. 103672, 2016-Ohio-7300, ¶ 35, citing *Getsy* at 198.

> Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of duress. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted.

*Id.,* quoting *Getsy.*

{¶ 55} As explained in *Getsy*:

One of the essential features of the defense of duress is a sense of immediate, imminent death, or serious bodily injury if the actor does not commit the act as instructed. *See* [*State v.*] *Cross*, [58 Ohio St.2d 482, 488, 391 N.E.2d 319 (1979) at] 487. The force used to compel the actor's conduct must remain constant; controlling the will of the unwilling actor during the entire time he commits the act, and must be of such a nature that the actor cannot safely withdraw. *See State v. Good*, 110 Ohio App. 415, 83 Ohio Law Abs. 65, 165 N.E.2d 28 [(10th Dist.1960)].

*Id.* at 199.

{¶ 56} This same showing is required for the defense of compulsion and coercion. *See, e.g., State v. Milam*, 108 Ohio App. 254, 260, 156 N.E.2d 840 (8th Dist.1959).

{¶ 57} We find no abuse of discretion in this matter because the record does not indicate that Crump dealt with a sense of immediate, imminent death, or serious bodily injury if she did not act as ordered to by Owens.

{¶ 58} This assigned error lacks merit.

### V. Sufficiency of the Evidence

{¶ 59} Crump next asserts that her convictions for reckless homicide and child endangering are not supported by sufficient evidence.

{¶ 60} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). The standard of review is whether,

after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jenks*.

{¶ 61} R.C. 2903.041(A) prohibits reckless homicide and states that "[n]o person shall recklessly cause the death of another * * *." Under R.C. 2901.22(C), "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." The offense can be shown through either affirmative acts or failure to seek medical attention that show heedless indifference to the consequences and perversely disregard a known risk that his or her conduct was likely to result in death. *State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, ¶ 94. *See also State v. Alston*, 9th Dist. Lorain No. 05CA008769, 2006-Ohio-4152, ¶ 9, 45-46; *State v. Hipshire*, 2d Dist. Darke No. 2010-CA-07, 2011-Ohio-3863, ¶ 44.

{¶ 62} Reviewing the record in this matter, we find that the state presented sufficient evidence as to Crump's recklessness for failing to seek medical treatment for T.M. after the fatal beating. The state also presented sufficient evidence demonstrating that Crump committed reckless homicide by aiding and abetting Owens during the fatal beating on March 17, 2017.

{¶ 63} R.C. 2919.22 defines the offense of endangering children as follows:

(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

(1) Abuse the child;

(2) Torture or cruelly abuse the child;

(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child * * *[.]

{¶ 64} This court has held, under similar circumstances, that a parent may be found guilty of child endangering for creating a substantial risk to the health or safety of the child where the parent fails to seek medical treatment for an injured or ill child. *State v. Jones*, 2018-Ohio-498, 105 N.E.3d 702, ¶ 93 (8th Dist.); *State v. Reynolds*, 8th Dist. Cuyahoga No. 65342, 1994 Ohio App. LEXIS 3610, 26 (Aug. 18, 1994).

{¶ 65} In this matter, the state presented sufficient evidence that Crump both abused T.M. in violation of R.C. 2919.22(B) (Count 12) and violated a duty of protection and care to T.M. in violation of R.C. 2919.22(A) (Count 15) on October 17, 2016. The evidence indicated that Crump was in the bathroom with T.M. at the time of the burn and did not immediately seek help for her despite the severe burns. The state also presented sufficient evidence that Crump both abused T.M. in violation of R.C. 2919.22(B) (Counts 5-8) and violated a duty of protection and care

to T.M. in violation of R.C. 2919.22(A) (Count 9) on March 15, 2017. The evidence indicated that Crump struck T.M., aided and abetted Owens in the beating, and did not seek help for the child for many hours.

{¶ 66} This assigned error lacks merit.

### VI. Manifest Weight of the Evidence

{¶ 67} For her sixth assigned error, Crump argues that her convictions are against the manifest weight of the evidence.

{¶ 68} In reviewing a challenge to the manifest weight of the evidence supporting a conviction, a reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a 'thirteenth juror' and may disagree with the factfinder's resolution of conflicting testimony." *Thompkins*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* Moreover, circumstantial evidence carries the same weight as direct

evidence. *State v. Seals*, 8th Dist. Cuyahoga No. 101081, 2015-Ohio-517, ¶ 32, citing *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 69} In this matter, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. The manifest weight of evidence demonstrated that Crump committed reckless homicide by aiding and abetting Owens during the fatal beating on March 17, 2017, and also failed to seek medical treatment for T.M. in the many hours following the fatal blows. The manifest weight of the evidence also demonstrated that Crump both abused T.M. in violation of R.C. 2919.22(B) (Count 12) and violated a duty of protection and care to T.M. in violation of R.C. 2919.22(A) on October 17, 2016 (Count 15), and that she both abused T.M. in violation of R.C. 2919.22(B) (Counts 5-8) and violated a duty of protection and care to T.M. in violation of R.C. 2919.22(A) on March 15, 2017 (Count 9). Therefore, this matter does not present the exceptional case in which the evidence weighs heavily against the conviction.

{¶ 70} The sixth assigned error lacks merit.

## VII. Failing to Merge Offenses

{¶ 71} In the seventh assigned error, Crump argues that the trial court erred in failing to merge her convictions for reckless homicide with the child endangering convictions for the March 17, 2017 abuse of T.M. in violation of R.C. 2919.22(B) (Counts 5-8).

{¶ 72} The state maintains that Crump did not object and forfeited all but plain error. However, the record indicates that prior to sentencing, the state and counsel for Crump discussed the issue of merger. The state refused to agree that offenses merge, however Crump argued that "Counts 1 and 2, the reckless homicide convictions, should merge with Counts 5, 6, and 7, child endangering counts." (Tr. 1996-1997.)

{¶ 73} The question of whether offenses should merge under R.C. 2941.25 ordinarily presents a question of law we review de novo. In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court held that courts considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25 should focus on the defendant's conduct. *Id.* at ¶ 25. R.C. 2941.25(A) allows only a single conviction for conduct by a defendant that constitutes "allied offenses of similar import." However, under R.C. 2941.25(B), a defendant charged with multiple offenses may be convicted of all the offenses if (1) the defendant's conduct constitutes offenses of dissimilar import or significance, (2) the conduct demonstrates that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with a separate animus. *Ruff* at ¶ 31.

{¶ 74} In the instant case, Crump was convicted of reckless homicide and endangering children under both R.C. 2919.22(A) and (B). The court merged both reckless homicide counts, but did not merge them with any of the endangering children counts. However, the court did merge Counts 5-8, endangering children in

violation of R.C. 2919.22(B), alleging that Crump administered abuse that created a substantial risk to the child on March 17, 2017. The court determined that the remaining child endangering counts, Count 9 (alleging that Crump violated a duty of care, protection or support in violation of R.C. 2919.22(A) on March 17, 2017), Count 12 (alleging that Crump administered abuse in violation of R.C. 2919.22(B) on October 17, 2016), and Count 15 (alleging that Crump violated a duty of care, protection or support in violation of R.C. 2919.22(A) on October 17, 2016) do not merge.

{¶ 75} On the issue of whether the reckless homicide counts merge with Counts 5-8, endangering children in violation of R.C. 2919.22(B), alleging that Crump administered abuse that created a substantial risk to the child on March 17, 2017, we note that this court addressed a similar issue in *State v. Esper*, 8th Dist. Cuyahoga No. 105069, 2017-Ohio-7069. In that case, Esper pled guilty to two offenses directly related to causing serious physical harm to his son: felonious assault in violation of R.C. 2903.11(A)(1) (knowingly cause serious physical harm to another); and child endangering with a serious physical harm specification, in violation of R.C. 2919.22(B)(1) (no person shall abuse a child resulting in serious physical harm). This court addressed the merger issue as follows:

> R.C. 2919.22 focuses on "child neglect and abuse." Subsection (A) defines the offense of neglect as the "violation of a duty of care, protection, or support which results in a substantial risk to his health or safety." Committee Comment to R.C. 2919.22. Subsection (B) of R.C. 2919.22, on the other hand, "deals with actual physical abuse of a child, whether through physical cruelty or through improper discipline or restraint." *Id.*

> The Ohio Supreme Court has similarly distinguished between the two types of child endangering by explaining that division (B) deals with affirmative acts of physical abuse whereas division (A) is concerned with circumstances of neglect. *State v. Kamel*, 12 Ohio St.3d 306, 309, 466 N.E.2d 860 (1984), citing *State v. Sammons*, 58 Ohio St.2d 460, 391 N.E.2d 713 (1979) (an affirmative act of abuse is a required element for a conviction under R.C. 2919.22(B); whereas subsection (A) involves acts of omission). "[A]n inexcusable failure to act in discharge of one's duty to protect a child, where such failure to act results in a substantial risk to the child's health or safety, is an offense under R.C. 2919.22(A)." *Id.* at 309 (finding that the failure to secure medical attention for son's injuries or to prevent further injury, constituted a violation of R.C. 2919.22(A)).

*Id.* at ¶ 12-13.

{¶ 76} This court concluded that the offenses were allied because they were committed with the same conduct and the same animus. This court stated:

> In this case, the record reflects that Esper's conduct that gave rise to the felonious assault charge was the same conduct that gave rise to the endangering children charge under R.C. 2919.22(B)(1) — his shaking of the child, which caused substantial physical harm to the child. Esper's conduct was committed with the same animus — out of anger and frustration on February 19, 2016. Esper's subsequent conduct of failing to seek immediate medical assistance was the basis for the dismissed endangering children charged under R.C. 2919.22(A).

*Id.* at ¶ 15.

{¶ 77} Because *Esper* involved felonious assault and a violation of subsection (B) child endangering (in violation of R.C. 2919.22(B)(1), no person shall abuse a child resulting in serious physical harm), this court distinguished an earlier case, *State v. Porosky*, 8th Dist. Cuyahoga No. 94705, 2011-Ohio-330, involving felonious assault and a violation of subsection (A) child endangering in violation of R.C. 2919.22(A), violation of a duty of care, protection, or support that results in a substantial risk to his health or safety. The *Esper* court emphasized that:

> Porosky first harmed his son (felonious assault) and then endangered him by failing to seek medical attention for the baby for approximately 12 hours * * *. Thus, even if child endangering and felonious assault could be considered allied offenses under the [old *State v.*] *Johnson* [128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061] framework, in this case, the offenses do not merge since Porosky committed them with a separate animus.

*Id.* at ¶ 11.

{¶ 78} Applying *Esper*, we conclude that Crump's March 17, 2017 conduct that gave rise to the reckless homicide charges (Counts 1 and 2) was the same conduct that gave rise to the abuse-related endangering children charges under R.C. 2919.22(B) (Counts 5-8). Crump's conduct was also committed with the same animus, i.e., anger and frustration with T.M. Therefore, these counts should have merged. *Accord State v. Grube*, 2013-Ohio-692, 987 N.E.2d 287, ¶ 52 (4th Dist.) (applying *Johnson* framework and remanding for trial court to must consider whether child endangering was committed separately and with a separate animus from aggravated murder). However, Crump's subsequent conduct of failing to seek medical assistance for over nine hours on the same date, endangering children under R.C. 2919.22(A) (Count 9), was based upon different conduct and was motivated by a different animus, so it does not merge.

{¶ 79} The state argues that different conduct could support both convictions, i.e., endangering children from failing to stop Owens's abuse and reckless homicide from aiding and abetting Owens's abuse. However, there is no evidence to establish that there was a break in a temporal continuum between the initial blows and the final beating such that we could find that there were separate

acts or a separate animus for the acts. *See Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, in which the court stated:

> We decline the invitation of the state to parse Johnson's conduct into a blow-by-blow in order to sustain multiple convictions for the second beating. This beating was a discrete act that resulted in the simultaneous commission of allied offenses, child abuse and felony murder.

*Id.* at ¶ 56. *See also State v. Anthony*, 2015-Ohio-2267, 37 N.E.3d 751, ¶ 50 (8th Dist.).

{¶ 80} This assigned error is well taken in part.

### VIII. Aiding and Abetting in Reckless Homicide

{¶ 81} For her eighth assigned error, Crump maintains that the trial court erred in allowing the state to present a complicity theory of reckless homicide because aiding and abetting requires the actor to knowingly intend to aid and abet, whereas reckless homicide requires mere recklessness.

{¶ 82} As this court explained in the discussion of the first assigned error, R.C. 2923.03(A)(2) states, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." Under R.C. 2923.03(F), "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." *McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, at ¶ 244. *Accord Bishop*, 2008-Ohio-6964, at ¶ 35; *Dayton*, 2018-Ohio-3003, at ¶ 99. Therefore, the aiding and abetting instruction

was not required to state that Crump acted "knowingly." *Redding*, 8th Dist. Cuyahoga No. 59988, 1992 Ohio App. LEXIS 972, 21.

{¶ 83} The eighth assigned error lacks merit.

### IX. Failure to Sever Charges

{¶ 84} In the ninth assigned error, Crump asserts that the trial court erred in failing to sever the charges pertaining to T.M.'s October 2016 burn from the charges pertaining to her March 2017 death.

{¶ 85} Under Crim.R. 13, a court may order two or more cases be tried together "if the offenses * * * could have been joined in a single indictment * * *." Pursuant to Crim.R. 8(A), two or more offenses may be joined if the offenses "are of the same or similar character * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." While the law favors the joinder of offenses that are of the "same or similar character," a defendant may move to sever the charges under Crim.R. 14 upon a showing of prejudice. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). In *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, the court explained:

> The defendant, however, bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29[.]
>
> The state may rebut a defendant's claim of prejudicial joinder in two ways. First, if in separate trials the state could introduce evidence of the joined offenses as "other acts" under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder. *Lott*, 51 Ohio St.3d at 163, 555

N.E.2d 293.  Second, the state can refute prejudice by showing that "evidence of each crime joined at trial is simple and direct."

*Id.* at ¶ 95-96.

{¶ 86}  Moreover, the jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated. *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981).

{¶ 87}  Applying the *Diar* analysis, we find no abuse of discretion.  Had the charges from the burn incident been severed from the homicide-related charges, this evidence would have been admissible under Evid.R. 404(B).  *See Diar,* 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, at ¶ 97.  Moreover, the evidence from the each incident was simple and direct.

{¶ 88}  This assigned error lacks merit.

## X.  Ineffective Assistance of Counsel

{¶ 89}  In her tenth assigned error and a portion of her seventh assigned error, Crump raises various ineffective assistance of counsel claims.  She asserts that her trial counsel was ineffective for: (1) conceding that the child endangering convictions in Counts 9 and 15 were not subject to merger; (2) failing to  renew the motion to sever the charges; (3), failing to object to the jury instructions; (4) failing to request specific findings on the charged offenses; (5) failing to argue for merger of offenses; (6) failing to object to Dr. Gilson's testimony as beyond the scope of rebuttal; and (7) making improper comments to the jury.

{¶ 90} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Id.* In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905.

{¶ 91} Beginning with Crump's first contention that Counts 9 and 15 should have merged, we note that they are from separate dates so they do not share the same conduct or animus. Counsel was not ineffective in failing to seek merger, so the ineffectiveness claim raised within the seventh assigned error lacks merit.

{¶ 92} Turning to claims two through five, we have determined that each of the claimed errors are without merit, so they cannot serve as a basis for establishing trial error to support her claim of ineffective assistance. *See State v. Henderson*, 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (1988).

{¶ 93} Regarding the sixth claim regarding defense counsel's failure to object to Dr. Gilson's testimony as beyond the scope of permitted rebuttal, we recognize that the purpose of rebuttal is to allow the state to refute evidence offered by the defense. *State v. Linder*, 8th Dist. Cuyahoga No. 106600, 2018-Ohio-3951, ¶ 49, citing *State v. Moore*, 47 Ohio App.2d 181, 353 N.E.2d 866 (9th Dist.1973). It is a matter left to the discretion of the trial court. *Id.*, citing *State v.*

*Graven*, 54 Ohio St.2d 114, 115, 374 N.E.2d 1370 (1978), and *State v. Bayless*, 48 Ohio St.2d 73, 357 N.E.2d 1035 (1976). Here, Dr. Gilson's testimony was offered to rebut Dr. Young's testimony on the cause of death and was not beyond the scope of proper rebuttal testimony. Trial counsel did not err in failing to object to it. *Linder*.

{¶ 94} Finally, as to the seventh claim regarding trial counsel's conduct, Crump complains that counsel stated in closing argument that he "wasn't happy" that he "had to take this case" and painted an "improper picture" of her, the record shows that Crump's trial counsel spoke in extreme candor to the jurors, expressing heartfelt concerns with the issuance of an indictment in this matter. Further, there is no basis on the record from which we can conclude that he behaved improperly.

{¶ 95} Accordingly, the ineffective assistance of counsel claims raised in the seventh and tenth assigned errors are without merit.

### XI. Cumulative Errors

{¶ 96} In the eleventh assigned error, Crump argues that the combined weight of multiple errors prejudiced her and entitles her to a new trial.

{¶ 97} Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132; *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). However, the doctrine of cumulative error is inapplicable when the alleged errors

are found to be harmless or nonexistent. *Id.*; *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 48.

{¶ 98} In this matter, because we have determined that each of the other claimed errors are without merit, the doctrine of cumulative error is inapplicable.

{¶ 99} The eleventh assigned error is without merit.

{¶ 100}The convictions are affirmed, but the portion of the sentence that failed to merge the reckless homicide counts with child endangering under Counts 5-8 is reversed, and the matter is remanded for resentencing.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR

# Appendix

I.      The trial court committed plain error and violated [Crump's] right to due process of law and a unanimous verdict pursuant to Crim. R. 31(A) where it found [Crump] guilty following a jury trial on a duplicative lesser included charged of reckless homicide where the jury instruction included all possible theories of the offense which could be committed by alternative means or multiple acts.

II.      The trial court committed plain error in violating the multiple acts test when it convicted [Crump] of child endangering in Counts 9 and 15.

III.    The trial court committed plain error when it gave a reckless homicide jury instruction for each charge of aggravated murder where the causation portion of the instruction regarding failure to act was not a lesser included offense.

IV.    The trial court abused its discretion when it generically instructed the jury on aiding and abetting regarding all offenses and further misled it by not properly instructing on complicity/aiding and abetting and did not use the proper Ohio jury instruction with the necessary affirmative defenses and otherwise committed plain error.

V.     [Crump's] convictions were not supported by sufficient evidence.

VI.    [Crump's] convictions were against the manifest weight of the evidence.

VII.   The trial court erred when it failed to merge [Crump's] convictions for reckless homicide with the child endangering convictions in Counts 5-8 and trial counsel was ineffective in conceding that the child endangering convictions in Counts 9 and 15 were not subject to merger.

VIII.  The trial court erred when it improperly allowed the state to present a theory of aiding and abetting charges with a mens rea of recklessness.

IX.    The court erred and abused its discretion by failing to sever the trials of the 2016 and 2017 events.

X.     [Crump] received ineffective assistance of trial counsel in violation of the Fifth and Sixth Amendments to the United States Constitution.

XI.    The cumulative effect of errors deprived [Crump] of a fair trial.